UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JAMES MICHAEL DAYSON,

        Plaintiff,                    Case No. 2:12-cv-455

v.                                            Honorable R. Allan Edgar

PATRICIA CARUSO et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.[1] The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

---

[1]Plaintiff James Dayson seeks to bring this action on behalf of himself, as well as four other prisoners. Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F.Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F.Supp. 914, 918 (E.D. Pa. 1978). Accordingly, James Dayson is the only Plaintiff recognized by the Court in this action.

irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated in the Kinross Correctional Facility. In his *pro se* complaint, he sues Patricia Caruso, former Director of the Michigan Department of Corrections (MDOC); Dan Bolden, former Deputy Director of the MDOC; and Corizon Health.

Plaintiff's complaint contains ten counts or claims concerning the conditions of his confinement. Additional facts will be provided below as necessary to resolve Plaintiff's claims. Plaintiff seeks injunctive relief and monetary damages with regard to each of his ten claims.

**Discussion**

I.    Class certification

Plaintiff makes several requests for class certification in his complaint. For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v. Campbell*, No. 98-6156, 1999 WL 777435, at *1 (6th Cir. Sept. 21, 1999). As Plaintiff is an incarcerated, *pro se* litigant, he is not an appropriate representative of a class. Consequently, the Court will deny Plaintiff's request for class certification.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr.*

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Count I: First Amendment Access to the Courts (law library)**

Plaintiff first claims that under the policy approved by Defendant Caruso, prisoners are limited to six hours per week in the prison law library unless the prisoner can demonstrate a court-imposed deadline. As a result of this restriction, Plaintiff claims: "He filed an AO 2004 Standard 4 brief. He was rushed to the point that this brief was inadequately prepared and it was filed late. Constitutional errors are now considered abandoned." (Compl., Exhibit A, docket #1-1, Page ID#12.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or

contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

The right of access to the courts has never been equated with unlimited access to legal materials at the prison library. *Walker*, 771 F.2d at 932; *see also Lewis*, 518 U.S. at 351 (a sub-par library or legal assistance program does not establish relevant actual injury). By his allegation that the brief was "inadequately prepared" and could not be timely filed, it is clear that Plaintiff means that he was unable to prepare the *quality* of brief that he desired within the filing deadline, not that he was unable to file a brief at all. Moreover, while Plaintiff had a limited amount of time per week in the law library, he had an unlimited amount of time to work on his brief in his cell. Even though *Bounds* gave inmates the tools to attack their sentences and challenge their conditions of confinement, the inability of an inmate to become a "litigating engine" is "simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 at 353-54. Because Plaintiff cannot show actual injury as the result of the policy limiting prisoners' use of the law library to six hours per week, he fails to state a claim against Defendant Caruso for denial of access to the courts.

B. **Count II: Eighth Amendment (overcrowding)**

In Count II, Plaintiff alleges that each MDOC facility is designed for a specific number of prisoners and has a predetermined ratio of prisoners to space, facilities and programs. Plaintiff contends that Defendant Caruso approved double-bunking at various MDOC facilities without adjusting these ratios. Plaintiff alleges that the increase in the number of prisoners at MDOC facilities has caused him increased tension and stress, as well as a general increase in murders, suicides, stabbings, robberies, rapes, fights, batteries, etc. Plaintiff alleges that Defendant Caruso

has been deliberately indifferent to the needs of prisoners and custodial staff by failing to take appropriate action to protect them.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

In *Rhodes*, the Supreme Court held that prison overcrowding, standing alone, does not violate the Eighth Amendment. 452 U.S. at 348. Rather, Plaintiff bears the burden of showing that crowded conditions led to independent deprivations of essential food, medical care, sanitation, or other necessities. *Id.* Plaintiff's allegations fail to meet this standard. While Plaintiff generally asserts negative consequence of overcrowding, he does not allege any specific instances in which the alleged conditions caused him to be deprived of essential food, medical care, sanitation, or other necessities. Furthermore, absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v.*

*Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008). Plaintiff alleges no physical injury. Accordingly, he fails to state an Eighth Amendment claim.

### C. Count III: Equal Protection/First Amendment/RLUIPA

Count III of the complaint concerns Plaintiff's practice of his Native American religion. Under Policy Directive (PD) 05.03.150 Religious Beliefs and Practices of Prisoners, prisoners practicing the Native American religion are permitted to possess in their personal property one medicine bag, with contents restricted to sage, sweet grass, cedar, bear berry leaf, mullein leaf, red willow bark, red sumac leaf, spearmint leaf, peppermint leaf, and lavender. (PD 05.03.150, Attach. A, eff. 08/16/10.) The contents also may include protection medicine, such as a small pebble or piece of legal vegetation, that is considered by the prisoner to have special significance but does not pose a threat to the custody and security of the facility. (*Id*.) In addition, Native American practitioners may possess two braids of sweet grass for smudging during group religious ceremonies and activities, unless sweet grass also is part of the contents of the prisoner's medicine bag. (*Id*.)

Plaintiff alleges that American Indians require tobacco because it is the only way to pray to Gitchie Manitou, the Great Spirit or Creator. According to Plaintiff, tobacco is a spiritual communication device and does not require being burned to work. Plaintiff claims that praying with tobacco is distinct from smudging, which is the ceremonial practice of burning sacred herbs to "remove[] negative emotions/energy and install[] positive emotions/energy." (Compl., docket #1, Page ID#4.) Plaintiff claims that the following materials are required for smudging: an abalone shell, sage, cedar, sweetgrass, tobacco and matches. Plaintiff contends that Defendant Caruso has prohibited Native American prisoners from having as their personal property the sacred items needed for smudging. He further claims that Defendant Bolden has prohibited Native American prisoners from smudging in their cells, where Plaintiff believes that it is most needed to protect him from

- 7 -

harm. Plaintiff asserts violations of the Fourteenth Amendment Equal Protection Clause, First Amendment Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*.

1. First Amendment

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I. The First Amendment is applicable to the States through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Prisoners retain the First Amendment right to the free exercise of their religion. *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985). However, "the circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs," requiring a court to "balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons." *Id*. When a prison regulation substantially infringes on an inmate's First Amendment religious practices, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Several factors are considered in determining the reasonableness of a prison regulation. First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id*. (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). Second, the court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id*. at 90. Third, the court should weigh the impact that the asserted constitutional right will have on the rights of prison guards and other inmates, as well as the allocation of prison resources. *Id*. Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id*.

As maintaining security, order, and discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the adoption and application of prison policies and procedures. *See Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979). "[B]ecause 'the problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems, [courts] generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (*quoting Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974)) (internal citation omitted). Further, "[w]here a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." *Turner,* 482 U.S. at 85. Thus, Plaintiff bears the burden of "overcom[ing] the presumption that the prison officials acted within their broad discretion." *Shaw*, 532 U.S. at 232 (internal quotations and citation omitted).

Prison officials have a legitimate governmental interest in preventing prisoners from possessing tobacco and matches in their personal property, as those items pose a clear danger to the heath and safety of prisoners and prison staff. Under MDOC Policy Directive 01.03.140(J), offenders are prohibited from possessing tobacco products except in areas designated by the Warden for group religious ceremonies or activities conducted pursuant to the policy governing prisoner religious beliefs and practices. MDOC employees and members of the public also are prohibited from using tobacco products inside and on the grounds of all MDOC facilities. (PD 01.03140(K)). The danger presented by allowing prisoners to possess matches in their cells is obvious. Moreover, Plaintiff alleges only that prisoners are not permitted to possess the materials required for smudging in their "personal" property; he does not allege that prisoners are unable to smudge as part of group religious services as provided by department policy. Consequently, prisoners practicing the Native

American faith have an alternative means of engaging in the smudging ritual. In addition, allowing prisoners to smudge in their cells would pose a serious threat to the safety and well-being of other prisoners and staff, both in terms of fire danger and the negative health consequences of being of exposed to tobacco smoke. Therefore, the policy of not allowing Native American prisoners to smudge in their cells does not violate the First Amendment. *See Tart v. Young*, 168 F. Supp.2d 590, 593 (W.D. Va. 2001) (prison policy prohibiting inmate from "smudging" with herbs did not violate inmate's rights under the Free Exercise Clause).

2. <u>Equal Protection</u>

The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[T]his language embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Club Italia Soccer & Sports Org. Inc. v. Charter Twp. of Shelby, Michigan*, 470 F.3d 286, 298 (6th Cir. 2006) (internal quotations omitted), *overruled on other grounds as recognized by Davis v. Prison Health Servs.*, 679 F.3d 433 (6th Cir. 2012). The Supreme Court has stressed that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

To prevail on an equal protection claim "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio–Ethical Reform v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club*

*Italia*, 470 F.3d at 299). Plaintiff makes only a conclusory allegation of religious discrimination. Plaintiff does not allege how he or Native American prisoners are being treated differently from similarly situated persons. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff, therefore, fails to state an equal protection claim.

### 3. RLUIPA

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). It does so by limiting the burdens that a government may place on a prisoner's free exercise rights:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person —
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a) (emphasis added). RLUIPA also provides a cause of action against a government: "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* § 2000cc–2(a). RLUIPA defines "government," in relevant part, as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law." *Id.* § 2000cc–5(4)(A)(i)–(iii).

Plaintiff specifically brought his claims against Defendants Caruso and Bolden in their individual capacities. As noted in *Heard v. Caruso*, 351 F. App'x 1, 13 n. 5 (6th Cir. 2009), the Sixth Circuit has not ruled on whether the inclusion of " any other person acting under color of State law" in the definition of government authorizes suits for monetary damages against state officials in their individual capacities. However, every other appellate court that has addressed the issue has held that RLUIPA, as an exercise of Congress's Spending Clause power, does not authorize a claim for damages against state employees in their individual capacities. *See Stewart v. Beach*, 701 F.3d 1322, 1334-35 (10th Cir. 2012); *Sharpe v. Johnson*, 669 F.3d 144, 154–55 (3d Cir. 2012); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 327–28 & n. 23 (5th Cir. 2009); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1272–75 (11th Cir. 2007). On this basis, this Court routinely holds that RLUIPA does not provide a cause of action for damages against state actors in their individual capacities. *See, e.g.*, *Green v. Tudor*, 685 F. Supp.2d 678, 699 (W.D. Mich. 2010); *Crump v. Prelesnik*, No. 1:10-cv-353, 2013 WL 1337790, at *1 n.1 (W.D. Mich. Mar. 29, 2013); *Hall v. Martin*, No. 1:10-cv-1221, 2012 WL 1579334, at *6 (W.D. Mich. Mar. 29, 2012); accord *Haight v. Thompson*, No. 5:11-cv-118, 2013 WL 1092969, at *8 (W.D. Ky. Mar. 15, 2013); *Aladimi v. Hamilton Cnty. Justice Ctr.,* No. 1:09–cv–398, 2012 WL 292587, at *18 (S.D. Ohio Feb. 1, 2012). Plaintiff, therefore, cannot bring a RLUIPA claim against Defendants Caruso and Bolden in their individual capacities.

        D.      **Count IV: First Amendment Access to the Courts (grievance process)**

In his fourth claim, Plaintiff asserts that Defendant Caruso approved Policy Directive 03.03.130, which governs the prisoner grievance process. Plaintiff contends that the policy is used

to protect the MDOC from prisoner lawsuits and to deny prisoners' right of access to the courts by allowing prison officials to reject grievances on procedural grounds, thereby preventing prisoners from properly exhausting their administrative remedies.

As previously discussed, the First Amendment right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *McFarland*, 1995 WL 150511, at *3 (citing *Knop*, 977 F.2d at 1009). However, as previously discussed, in order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis*, 257 F.3d at 511; *Talley-Bey*, 168 F.3d at 886. While Plaintiff generally asserts that prison officials use the grievance process to prevent prisoners from exhausting their administrative remedies, he does not allege any specific instance in which he suffered actual injury as a result of the alleged practice. Plaintiff, therefore, fails to state a claim.

E. **Count V: Eighth Amendment (dental care)**

In Count V of the complaint, Plaintiff alleges that Defendant Caruso approved the use of shortened toothbrushes within the MDOC. Plaintiff claims that he has been unable to properly clean his molars and, consequently, "is experiencing advanced tooth decay and physical pain." (Compl., docket #1, ¶ 25, Page ID#5.) While the Eighth Amendment requires that prisoners be provided with basic supplies for oral hygiene, *see Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010), Plaintiff does not allege why he is unable to properly clean his teeth with a shortened toothbrush. While it may be easier or more convenient to use a long toothbrush, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Accordingly, Plaintiff fails to state an Eighth Amendment claim.

F. **Counts VI and VII: Fourteenth Amendment (parole)**

Plaintiff alleges in Count VI that in September 2000, an administrative law examiner told Plaintiff that if he pleaded guilty to his parole violation charges, he would recommend Plaintiff's release after five months. Based upon the law examiner's recommendation, Plaintiff pleaded guilty to the charges. Plaintiff claims that despite being a model prisoner, the Michigan Parole Board violated his due process rights by keeping him in prison for nineteen months beyond the law examiner's recommendation. Plaintiff further claims in Count VII that the parole board, acting under the authority of Defendant Caruso, effectively resentences prisoners without due process of law.

To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia*, 470 F.3d at 296; *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. In a recent published decision, the Sixth Circuit

reiterated the continuing validity of *Sweeton*. *See Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

        H.        **Count VIII: Eighth Amendment/ADA (visual impairment)**

Plaintiff claims that Defendant Caruso violated the Eighth Amendment and the Americans with Disabilities Act (ADA) by failing to create a policy that protects visually impaired prisoners from staff and other inmates. Plaintiff attempts to bring this claim on behalf of Marsha Springer, a legally blind prisoner, who is incarcerated at the Huron Valley Correctional Facility. Because Plaintiff may not represent other prisoners, *Newsom*, 888 F.2d at 381, this claim must be dismissed.

        I.        **Count IX: Eighth Amendment (medical treatment)**

In Count IX, Plaintiff alleges that "Plaintiffs are being denied adequate medical treatment per policy of the contracted health care provider due to their fiscal concerns to earn a profit." (Compl., ¶ 45, Page ID#7-8.) He further claims that Defendant Caruso has failed to protect

the health of prisoners incarcerated by the MDOC by contracting with a for-profit health care corporation.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Plaintiff only generally asserts that he is being denied adequate medical treatment. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-69; *Twombly*, 550 U.S. at 555. Because Plaintiff does not make any specific allegations whatsoever regarding the denial of medical treatment, he fails to state a claim upon which relief may be granted.

J.     **Count X: Commerce Clause**

In his final claim, Plaintiff asserts that various MDOC policies enforced by Defendant Caruso restrict or prohibit interstate commerce in violation of the Commerce Clause, U.S. Const. Art 1, § 8, cl. 3. For example, Plaintiff contends that Policy Directive 04.02.105, Prisoner Funds, improperly restricts how inmates may use their funds. He further alleges that Policy Directive 04.07.112, Prisoner Personal Property, improperly restricts the type and amount of property an inmate may possess. Plaintiff also claims that Policy Directive 05.02.102, Hobbycraft Programs,

restricts or prohibits items received from non-approved vendors. Finally, Plaintiff asserts that Policy Directive 05.03.118, Prisoner Mail, improperly prohibits the receipt of sexually explicit materails.

Under the Commerce Clause, Congress has the power "[t]o regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const., art. I, § 8, cl. 3. "We have interpreted the Commerce Clause to invalidate local laws that impose commercial barriers or discriminate against an article of commerce by reason of its origin or destination out of State." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994). However, "[t]he [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98 (1994). "The Clause, by negative implication, restricts the States' ability to regulate interstate commerce." *Huish Detergents, Inc. v. Warren Cnty., Ky.*, 214 F.3d 707, 712 (6th Cir. 2000). "The dormant Commerce Clause is driven by concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.' " *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273–74 (1988)).

Plaintiff's argument clearly is without merit. Plaintiff does not make any allegations whatsoever that the complained of MDOC policies benefit in-state economic interests by burdening out-of-state competitors. Consequently, his allegations fail to implicate the Commerce Clause.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 5/2/2013                     */s/ R. Allan Edgar*
                                    R. Allan Edgar
                                    United States District Judge